1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9

| | |
|---|---|
| BRETT MCDONALD, | CASE NO. C17-0724JLR |
| Plaintiff, | ORDER ON MOTION TO DISMISS |
| v. | |
| BORA GURSON, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Defendants Bora Gurson and RoxyCar, Inc.'s (collectively, "Defendants") motion to dismiss *pro se* Plaintiff Brett McDonald's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and the *Colorado River* doctrine.  (MTD (Dkt. # 5).)  The court has considered the parties' submissions, the relevant portions of

//

//

//

the record, and the applicable law.  Being fully advised,[1] the court denies Defendants'

motion.

## II.     BACKGROUND

In January 2017, Mr. McDonald and Mr. Gurson met in Honolulu, Hawaii, at a

business seminar related to technology investment.  (Compl. (Dkt. # 1) ¶ 11); *Gurson v.*

*McDonald*, No. C17-0682JLR (W.D. Wash.), Dkt. # 1-2 ("Gurson Compl.") ¶ 4.[2]

According to both parties, Mr. McDonald and Mr. Gurson discussed Mr. Gurson's

artificial intelligence software, RoxyCar Technology, which automatically buys and sells

cars at auto auctions to generate a profit.  (Compl. ¶¶ 11-15); *Gurson*, No. C17-0682JLR,

Gurson Compl. ¶¶ 3-4.  Specifically, they discussed a potential role for Mr. McDonald in

the company, RoxyCar, Inc. ("RoxyCar")[3] that was formed to market the software.

(Compl. ¶¶ 16); *Gurson*, No. C17-0682JLR, Gurson Compl. ¶¶ 5, 8.  Mr. McDonald

signed a confidentiality agreement and attended meetings with potential investors.

(Compl. ¶¶ 16, 19-22, 28-30); *Gurson*, No. C17-0682JLR, Gurson Compl. ¶¶ 5-6, 9.

//

---

[1] No party requests oral argument, and the court concludes that oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The following background information references documents in related cases filed in this court.  Pursuant to Federal Rule of Evidence 201(b), the court may take judicial notice of pleadings filed in related cases.  *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).

[3] Mr. McDonald named "RoxyCar Inc." as a defendant in his federal action, whereas Mr. Gurson refers to the company as "RoxyCar Technologies, Inc." in his state court complaint. *Compare* Compl. ¶¶ 2, 6, *with Gurson*, No. C17-0682JLR, Gurson Compl. ¶¶ 8, 13.  The parties appear to refer to the same entity.

1   However, the business relationship between the parties rapidly began to deteriorate, and

2   the parties' versions of the events diverge after this point.

3          On March 29, 2017, Mr. Gurson filed suit in King County Superior Court against

4   Mr. McDonald and his marital community, alleging breach of contract and tortious

5   interference with business relationships.  *Gurson*, No. C17-0682JLR, Gurson Compl.

6   Mr. Gurson alleges that in early March 2017, his negotiations with Mr. McDonald broke

7   down before they reached an agreement about Mr. McDonald acquiring an ownership

8   interest in RoxyCar.  *Id.* ¶¶ 8, 11-12.  Mr. Gurson alleges that Mr. McDonald violated the

9   terms of the confidentiality agreement by disclosing confidential information to another

10  software development company and spoke poorly about Mr. Gurson to potential investors

11  who subsequently refused to invest in RoxyCar.  *Id.* ¶¶ 12-13, 15.

12         On April 19, 2017, Mr. McDonald filed a *pro se* complaint against Mr. Gurson,

13  RoxyCar, and a number of John Doe defendants in this court, alleging breach of contract,

14  unjust enrichment, and promissory estoppel arising out of the same events.  *See*

15  *McDonald v. Gurson*, No. C17-0619JLR (W.D. Wash.), Dkt. # 1 ("McDonald Compl.").

16  Five days later, Mr. McDonald removed Mr. Gurson's state court action on the basis that

17  Mr. Gurson's state court claims arise out of the same events.  *Gurson*, No. C17-0682JLR,

18  Dkt. # 1 ("Not. of Removal").  On July 7, 2017, this court granted Mr. Gurson's motion

19  to remand the state action, concluding that supplemental jurisdiction did not provide a

20  basis for removal and that the forum defendant rule barred Mr. McDonald from removing

21  the case.  *Gurson*, No. C17-0682JLR, Dkt. # 15 ("Remand Order").

22  *//*

While Mr. Gurson's motion to remand was still pending, the court dismissed Mr. McDonald's complaint against Mr. Gurson without prejudice for lack of subject matter jurisdiction because Mr. Gurson did not adequately allege complete diversity. *McDonald*, No. C17-0619JLR, Dkt. # 11 ("Order of Dismissal"). Mr. McDonald filed the instant action on May 9, 2017, eliminating the John Doe defendants. (*See* Compl.) Mr. McDonald alleges that he and Mr. Gurson reached an enforceable agreement that Mr. McDonald would handle all of RoxyCar's operations in exchange for 10 percent of the company. (*Id.* ¶¶ 17, 154.) Mr. McDonald alleges that Mr. Gurson breached the agreement by firing Mr. McDonald without cause. (*Id.* ¶ 155.) On May 31, 2017, Mr. Gurson filed the motion to dismiss Mr. McDonald's complaint that is now before the court. (*See* MTD.)

### III.    ANALYSIS

Mr. Gurson moves to dismiss Mr. McDonald's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (*See* MTD at 1.) Mr. Gurson argues that the court should decline to exercise subject matter jurisdiction in deference to the state court proceedings pursuant to the *Colorado River* abstention doctrine. (*See id.*); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

**A.    Legal Standard**

Rule 12(b)(1) governs the dismissal of a claim at any time prior to final judgment if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A defendant may move under Rule 12(b)(1) for a stay or dismissal of an action pursuant to the

//

*Colorado River* doctrine. *Revolon Monterey Energy LLC v. Peak Operator LLC*,

No. CV 13-7048 PSG (MRW), 2013 WL 12123689, at *1 (C.D. Cal. Dec. 27, 2013)

(citing *Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1188 (9th

Cir. 2008)).

Prior to the Supreme Court's decision in *Colorado River*, federal courts

recognized three "extraordinary and narrow exceptions to the duty of a District Court to

adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813 (quoting

*Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1950)). These

abstention doctrines are based on concerns of state-federal comity or avoidance of

constitutional decisions. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501-02

(1943) (recognizing abstention based on the ability of state court determinations of state

law to moot federal constitutional issues); *Burford v. Sun Oil Co.*, 319 U.S. 315, 332-33

(1943) (recognizing abstention based on the presence of difficult state law issues

involving important public policy concerns); *Younger v. Harris*, 401 U.S. 37, 41 (1971)

(recognizing abstention based on the use of federal jurisdiction to restrain state criminal

proceedings). Absent these special and narrow circumstances, the federal courts have a

"virtually unflagging obligation" to exercise their jurisdiction, even if an action

concerning the same matter is pending in state court. *Colorado River*, 424 U.S. at 817.

In *Colorado River*, the Supreme Court recognized that there are exceptional cases

where the three abstention doctrines do not apply, but dismissal of a duplicative federal

case in favor of allowing a pending state action to unilaterally proceed is nevertheless

appropriate based on considerations of "[w]ise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (internal quotation marks omitted and alteration in original). However, the Court cautioned that due to "the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention" pursuant to the other three doctrines. *Id.* at 818.

The Court "declined to prescribe a hard and fast rule for dismissals of this type," but instead identified four factors relevant to whether *Colorado River* abstention is appropriate: (1) which court first assumed jurisdiction over the property, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the concurrent forums obtained jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983) (citing *Colorado River*, 424 U.S. at 818-19). In *Moses H. Cone*, the Supreme Court added two additional factors: (5) whether "federal law provides the rule of decision on the merits," and (6) whether the state court proceedings are inadequate to protect the federal litigant's rights. 460 U.S. at 23, 26. The Ninth Circuit subsequently held that courts may consider forum shopping as a seventh factor because "the prevention of forum shopping would promote wise judicial administration." *Am. Int'l Underwriters (Phil.), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988). Finally, the Ninth Circuit has clarified that abstention is not warranted unless the federal and state proceedings are sufficiently "parallel." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). This threshold parallelism requirement

is not met if there is "a substantial doubt as to whether the state proceedings will resolve the federal action." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). If abstention is appropriate, the Ninth Circuit generally requires a stay rather than a dismissal to ensure that "the federal forum will remain open if 'for some unexpected reason the state forum does turn out to be inadequate.'" *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989) (quoting *Moses H. Cone*, 460 U.S. at 28).

A court's decision to abstain under the *Colorado River* doctrine "does not rest on a mechanical checklist" of the relevant factors, "but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. The relevant factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand," and the "weight to be given to any one factor may vary greatly from case to case." *Id.* Ultimately, the court must make "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise." *Id.* at 15 (quoting *Colorado River*, 424 U.S. at 818-19). "Any doubt as to whether a factor exists should be resolved against a stay" because only "'the clearest of justifications'" warrants deference to parallel state proceedings. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (quoting *Colorado River*, 424 U.S. at 819).

//

//

**B.      Parallel Suits**

The threshold question in deciding whether a *Colorado River* stay is appropriate is whether the federal and state suits are parallel.[4]  *See T.K. v. Stanley*, No. C16-5506BHS, 2017 WL 2671295, at *2 (W.D. Wash. June 21, 2017) (citing *Nakash*, 882 F.2d at 1415). Mr. Gurson argues that the state and federal proceedings are sufficiently parallel because the parties' claims arise out of the same transaction and occurrence.  (*See* MTD at 7 ("Both lawsuits relate to the same dealings regarding RoxyCar between Gurson and McDonald from January and April of 2017.").)  Mr. Gurson argues that if the court dismisses Mr. McDonald's complaint, the state court proceedings will resolve all of Mr. McDonald's claims because they are compulsory counterclaims in the state court action. (*See id.*); *see also* Wash. Super. Ct. Civ. R. 13 (providing that a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" unless "at the time the action was commenced the claim was the subject of another pending action"); *Schoeman v. New York Life Ins. Co.*,

//

//

---

[4] Mr. McDonald argues that there is no parallel state proceeding and that Mr. Gurson's motion to dismiss is "not ripe" because Mr. McDonald removed the state action.  (Resp. at 2, 10.)  Indeed, when Mr. Gurson filed his motion to dismiss, Mr. McDonald had removed the state action to federal court and Mr. Gurson's motion to remand that action was still pending.  (*See* MTD (filed 5/31/2017)); *Gurson*, No. C17-0682JLR, Not. of Removal (filed 4/24/2017); Dkt. # 5 ("Mot. to Remand") (filed 5/3/2017), Remand Order (filed 7/7/2017).  However, Mr. McDonald's argument is moot because the court granted the motion to remand.  *See Gurson*, No. C17-0682JLR, Remand Order.  Further, the Ninth Circuit has held that a district court may consider a removed state action in the *Colorado River* analysis.  *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 982 (9th Cir. 2011) ("Courts generally rely on the state of affairs at the time of the *Colorado River* analysis. . . . We think this state of affairs includes the court's discretion to remand the Removed Action.").

726 P.2d 1, 5 (1986) (noting that if a party fails to assert a compulsory counterclaim, he is barred from bringing a later action on that claim).

Mr. McDonald argues that the state and federal actions are not sufficiently parallel because Mr. Gurson's claims in state court concern the confidentiality agreement, and a decision on the confidentiality agreement will not resolve Mr. McDonald's claims in federal court that he is entitled to a 10 percent interest in RoxyCar. (*See* Resp. at 2, 7.) Mr. McDonald does not respond to Mr. Gurson's contention that Mr. McDonald's claims are compulsory counterclaims in state court. (*See generally* Resp.)

The state and federal proceedings here are sufficiently parallel to meet the threshold requirement. In the Ninth Circuit, "exact parallelism" between the state and federal cases is not required. *Nakash*, 882 F.2d at 1416. Rather, it is enough "if the two proceedings are 'substantially similar.'" *Id.* In *Nakash*, the Ninth Circuit concluded that state and federal proceedings were substantially similar because "[a]ll of these disputes concern how the respective parties have conducted themselves since Nakash purchased a portion of Guess." *Id.* The fact that Mr. Nakash, who was the defendant in state court and the plaintiff in federal court, had voluntarily dismissed his cross-complaint in state court and rendered the proceedings not identical did not alter the court's analysis. *Id.* at 1417. Although the claims in the state and federal proceedings here are not mirror images of each other, both proceedings concern how the respective parties have conducted themselves since they began business dealings related to RoxyCar. (*See* Compl.); *Gurson*, No. C17-0682JLR, Gurson Compl.

//

Moreover, the parallelism required under the *Colorado River* doctrine "contemplates that the federal court will have nothing further to do in resolving any substantive part of the case" once the state court renders a decision. *Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002) (quoting *Intel Corp.*, 12 F.3d at 913). "When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. If the court dismissed or stayed proceedings, the state litigation would almost certainly resolve all the disputes between the parties because Mr. McDonald's claims are compulsory counterclaims that would, if not asserted, be barred in a future action. *See Manchester v. Ceco Concrete Constr., LLC*, No. C13-0832RAJ, 2014 WL 1805548, at *3 (W.D. Wash. May 7, 2014) (applying *Shoeman*, 106 Wash. 2d at 863-64, and denying plaintiff leave to amend its complaint to add a claim that was a compulsory counterclaim and should have been raised in arbitration). Indeed, other courts have concluded that when a defendant in a state court action fails to assert a compulsory counterclaim under state law, and instead brings that claim in federal court, the two cases are sufficiently parallel. *See Compass Bank v. Eager Rd. Assocs., LLC*, No. 4:10CV0413 JCH, 2011 WL 3794257, at *3 (E.D. Mo. Aug. 25, 2011); *ADS Pub. Servs., Inc. v. Summit Grp., Inc.*, No. 95 C 6794, 1996 WL 332684, at *3 (N.D. Ill. June 13, 1996); *Jackson Hewitt, Inc. v. J2 Fin. Serv. Inc.*, 901 F. Supp. 1061 (E.D. Va. 1995); *Bagdan v. Sony Corp. of Am.*, 767 F. Supp. 81, 83 (D. Vt. 1991); *see also Casablanca Resorts, LLC v. Backus*, No. 2:07 CV 00057 HDM RJ, 2007 WL 951946, at *1 (D. Nev. Mar. 28, 2007)

("Although it is unclear what counterclaims, if any, [the federal plaintiffs/state court defendants] asserted in connection with the Utah action, it appears that any such claims would have been compulsory under [state rules.] . . . Accordingly, the claims pending in Utah state court are 'substantially similar' to those asserted in the current action."). Accordingly, the court finds that the state proceeding parallels this federal action.

**C.    Evaluation of the Factors**

Having determined that there is a parallel state court action, the court evaluates the *Colorado River* factors to determine whether exceptional circumstances justify a stay or dismissal.

1. <u>Which Court First Assumed Jurisdiction Over Property</u>

The first factor of the *Colorado River* analysis is which court first assumed jurisdiction over the property in dispute. *Moses H. Cone*, 460 U.S. at 15. This factor is irrelevant because there is no property in dispute that is the sort of tangible physical property referred to in *Colorado River*. *See Am. Int'l Underwriters*, 843 F.2d at 1258.

2. <u>Inconvenience of the Federal Forum</u>

In some cases, the geographic inconvenience of the federal forum may be "so great that this factor points toward abstention." *Travelers*, 914 F.2d at 1368 (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.3d 1185, 1192 (5th Cir. 1988)). This factor is irrelevant here because both the federal and state forums are located in the same city.[5]

---

[5] Mr. McDonald contests the characterization of the first and second factors as "irrelevant" and argues that where a suit does not concern a specific piece of property and where the state and federal forums are in the same city, these factors are not irrelevant, but rather, weigh against abstention. (*See* Resp. at 9-10.) Mr. McDonald's characterization finds support in

*See Nakash*, 882 F.2d at 1415 n.6 (finding this factor irrelevant where the forums were equally convenient); *Alaska Airlines, Inc. v. Schurke*, No. C11-0616JLR, 2013 WL 1898209, at *8 (W.D. Wash. May 6, 2013) (finding this factor irrelevant because both the state and federal forums were located in Washington).

### 3. Desirability of Avoiding Piecemeal Litigation

Mr. Gurson argues that this factor weighs significantly against exercising jurisdiction because the two courts will be litigating "the exact same factual issues and the same transaction and occurrence." (*See* Reply at 7; *see also* MTD at 9.) Indeed, if the parties file counterclaims in both forums, it appears the suits will be litigating nearly identical issues and claims. *See* Wash. Super. Ct. Civ. R. 13 ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.); Fed. R. Civ. P. 13 (providing for compulsory and

//

---

other Circuits. *See, e.g.*, *Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("[T]he absence of a res point[s] toward exercise of federal jurisdiction."); *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 648 (7th Cir. 2011) ("[B]ecause of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction."). The Court follows the Ninth Circuit's characterization of these factors as "irrelevant" under these circumstances, but does not find it at odds with the other Circuits. Regardless of the characterization, the court's conclusion is the same. The court begins from the position that it is obligated to exercise jurisdiction, and it considers "the combination of factors counselling against that exercise." *Moses H. Cone*, 460 U.S. at 15. The court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Id.* at 25-26. Where the suit does not concern a specific piece of property and where the state and federal forums are located in the same city, these factors do not justify surrendering jurisdiction.

permissive counterclaims). Even if the parties do not file counterclaims, however, they may conduct discovery relating to the same events in two separate lawsuits proceeding in different forums and under different procedural rules with the potential for conflicting judicial rulings.

In *Colorado River*, the "paramount" consideration was the danger of piecemeal litigation. *See Moses H. Cone*, 460 U.S. at 19. The Colorado legislature had divided the state into seven water districts and established procedures for settling water claims within those districts. 424 U.S. at 804-05. Rather than adjudicate via these procedures, the United States sued some 1,000 water users in federal court, seeking a declaration of the water rights of certain federal entities and Indian tribes. *Id.* at 805. A defendant in that suit sought to join the United States in a state court proceeding in order to comprehensively adjudicate and administer all water rights within the river system that were the subject of the federal court suit. *Id.* at 806. The Supreme Court concluded that the McCarran Amendment, 43 U.S.C. § 666, which waived federal sovereign immunity in suits adjudicating the ownership or administration of water rights, indicated a "clear federal policy" for "the avoidance of piecemeal adjudication of water rights in a river system." *Colorado River*, 424 U.S. at 819. The Court found that federal policy "akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property." *Id.*

The "mere possibility of piecemeal litigation," however, "does not constitute an exceptional circumstance." *R.R. St. & Co.*, 656 F.3d at 979 (citing *Travelers*, 914 F.2d at

1369).  In *Travelers*, the Ninth Circuit reversed a district court order that stayed

proceedings under *Colorado River* solely on the basis of this factor.  914 F.2d at 1372.

The Court held that a "correct evaluation of this factor involves considering whether

exceptional circumstances exist which justify special concern about piecemeal litigation."

*Id.* at 1369.  The Court further concluded that, unlike *Colorado River*, there was no

federal legislation evincing a federal policy to avoid piecemeal litigation and no vastly

more comprehensive state action.  *Id.*  Moreover, because the state court had made no

rulings in regard to the dispute at the time of the district court's stay order, there was "no

certainty that duplicative effort would result."  *Id.*  Thus, merely avoiding piecemeal

litigation did not justify abstention.  *Id.*

Mr. Gurson does not identify any special concerns about piecemeal litigation.  He

does not identify an explicit legislative policy of avoiding piecemeal litigation in this

context.  (*See generally* MTD.)  Moreover, he does not argue that the state proceeding is

vastly more comprehensive than the federal proceeding.  (*See id.*); *cf. R.R. St. & Co.*, 656

F.3d at 979 (finding that this factor weighed in favor of abstention because the federal

suit asked the district court "to adjudicate rights that are implicated in 'a vastly more

comprehensive' state action").  Finally, the state court has not issued any substantive

rulings on the merits of the case.  (*See generally* MTD; Reply); *cf. Stanley*, 2017 WL

2671295, at *4 (finding this factor weighed in favor of abstention because the state trial

court already granted a summary judgment motion and "the only avenue whereby

Plaintiffs could prevail is if the Court reached a different result on the same issue").

Because special concerns about avoiding piecemeal litigation are absent, this factor is

neutral. *See Kennedy v. Phillips*, No. C11-1231MJP, 2012 WL 261612, at *6 (W.D. Wash. Jan. 30, 2012) ("While there's a danger of piecemeal litigation without a stay because Plaintiffs' claims overlap with counterclaims brought in the [state] action, piecemeal litigation is not sufficient reason to refuse the exercise of jurisdiction."); *Riski Prods., Inc. v. Carrado*, No. 07CV1383-LAB (CAB), 2008 WL 4492603, at *4 (S.D. Cal. Sept. 29, 2008) ("While [the defendant] persuasively argues that conducting related state and federal litigation simultaneously is not the best . . . use of judicial resources, and maintenance of concurrent actions could result in conflicting results, these problems alone are an inadequate basis" for a stay.).

4. <u>Order in Which the Forums Obtained Jurisdiction</u>

The court also considers the order in which jurisdiction was obtained. Priority "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21; *see Nakash*, 882 F.2d at 1415 (finding that this factor weighed in favor of abstention where the state suit had progressed "far beyond" the federal case); *R.R. St. & Co.*, 656 F.3d at 980 (finding that although the federal court technically obtained jurisdiction of the specific claims first, this factor weighed in favor of abstention because the state court had already made significant progress in the related action); *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 718-19 (7th Cir. 1982) (holding that the fact that the state case was filed one month earlier did not automatically warrant a stay because "[e]ven before . . . *Colorado River* . . . stays or dismissals were rarely upheld just because

//

the state suit had been filed a few weeks before the federal. Typically the state suit was well under way at the time the federal suit was filed.").

Mr. Gurson filed the state suit first, on March 29, 2017, but it appears that neither case has significantly progressed. *See Gurson*, No. C17-0682JLR, Gurson Compl.; *Gurson v. McDonald*, King County Superior Court Case No. 17-2-07709-7.[6] According to Mr. Gurson, he filed a motion for a preliminary injunction in the state case on March 31, 2017, but the court has not ruled on the motion because Mr. McDonald subsequently removed the case. (*See* MTD at 3.) Although this court remanded that action to the state court on July 7, 2017, the court is unaware of any further progress. *See Gurson*, King County Superior Court Case No. 17-2-07709-7.

Mr. McDonald filed his initial complaint in federal court on April 19, 2017, and after it was dismissed for lack of subject matter jurisdiction, he eliminated a number of defendants and filed the instant complaint on May 9, 2017. (*See* Compl.) Apart from the instant motion to dismiss, no progress has been made in this case, although Mr. McDonald argues otherwise because he filed a motion to enforce a settlement agreement. (*See* Resp. at 5.) However, he filed that motion in the removed action that the court remanded. *See Gurson*, No. C17-0682JLR, Dkt. # 4. Therefore, there is no motion to enforce a settlement agreement pending. Because there has been no substantial progress

---

[6] The court takes judicial notice of the publicly available King County Superior Court docket. *See* Fed. R. Evid. 201 (providing that the court may take judicial notice of any fact that is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (internal quotations omitted).

of one lawsuit compared to the other, this factor is neutral. *See Stockman-Sann v. McKnight*, No. SACV 12-1882 AG JPRX, 2013 WL 8284817, at *5 (C.D. Cal. Mar. 25, 2013) (concluding that where the state action was filed 19 days before the federal suit, "this short difference in timing is not enough to weigh in favor of staying the case" and thus

this factor is "neutral"); *Sabbag v. Cinnamon*, No. 5:10-CV-02735-JF HRL, 2010 WL 8470477, at *6 (N.D. Cal. Dec. 10, 2010) ("[T]he Court cannot conclude that this factor weighs in favor of a dismissal or stay, as the difference in time is relatively small and the amount of progress in the state derivative action has been minimal.").

5.  <u>Whether Federal or State Law Provides the Rule of Decision on the Merits</u>

Where a suit presents federal law issues, this factor "must always be a major consideration weighing against surrender" of jurisdiction. *Moses H. Cone*, 460 U.S. at 26. However, the "presence of state-law issues may weigh in favor of that surrender" only "in some rare circumstances." *Id.* "Routine issues of state law" that a district court is fully capable of deciding do not present "rare circumstances." *Id.* Mr. Gurson argues that Washington law applies to all of Mr. McDonald's ownership claims, and Mr. McDonald contends that Delaware law applies to the interpretation of the confidentiality agreement. (*See* Resp. at 6-7; Reply at 5.) Mr. Gurson concedes that the case does not concern any federal law issues, and he does not argue that the issues of state law are difficult or otherwise present "rare circumstances." (*See generally* MTD; Reply.) Accordingly, this factor is also neutral. *See Sirna Therapeutics, Inc. v. Protiva Biotherapeutics, Inc.*, No. C-06-1361 MMC, 2006 WL 3491027, at *9 (N.D. Cal. Dec. 1,

2006) (finding this factor neutral where there were no federal issues or non-routine state issues).

6. Whether the State Court Proceedings are Inadequate to Protect the Federal Litigant's Rights

"A district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants." *R.R. St. & Co.*, 656 F.3d at 981. This factor does not inquire into the competency of the state judiciary, but instead considers whether the state court lacks power to effect the remedy the plaintiff seeks. *See Moses H. Cone*, 460 U.S. at 26-27. "This factor is most often employed, and is most important, where there are exclusively federal claims that could not be brought as part of the state-court action." *Bushansky v. Armacost*, No. C 12-01597 WHA, 2012 WL 3276937, at *5 (N.D. Cal. Aug. 9, 2012). Mr. McDonald does not contend that he brings exclusively federal claims or that the Washington state court will be unable to provide the relief he seeks. (*See generally* Resp.) Instead, Mr. McDonald argues that the state court cannot adequately protect his rights because Mr. Gurson is "litigating in bad faith" and "stay[ing in state court]. . . make[s] discovery in Hawaii, California, Delaware, [and] other states more expensive or impossible." (*See id.* at 8-9.) Mr. McDonald does not support his contention with citation to legal authority or provide any further explanation specifically demonstrating that he would be unable to obtain the relief he seeks in state court. (*See generally id.*) Accordingly, this factor is neutral. *See Stockman-Sann*, 2013 WL 8284817, at *6; *Sirna Therapeutics, Inc.*, 2006 WL 3491027, at *10.

//

1    7. <u>Forum Shopping</u>

2        The court also considers whether the parties are engaging in improper forum

3    shopping.  "When evaluating forum shopping under *Colorado River*, we consider

4    whether either party improperly sought more favorable rules in its choice of forum or

5    pursued suit in a new forum after facing setbacks in the original proceeding."  *Seneca Ins.*

6    *Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 846 (9th Cir. 2017).  For example, in

7    *Nakash*, the Ninth Circuit found forum shopping where, after three and a half years of

8    litigation in a case that was progressing to its detriment, one party sought a new forum for

9    its claims.  882 F.2d at 1415.  The Ninth Circuit also found forum shopping where, after

10   two and a half years, a plaintiff "abandon[ed] its state court case solely because it

11   believe[d] that the Federal Rules of Evidence [we]re more favorable to it than the state

12   evidentiary rules."  *Am. Int'l Underwriters*, 843 F.2d at 1259.  In addition, the Ninth

13   Circuit recently noted:

14           It typically does not constitute forum shopping where a party "acted within
             his rights in filing a suit in the forum of his choice," *Madonna*, 914 F.2d at
15           1371, even where "[t]he chronology of events suggests that both parties took
             a somewhat opportunistic approach to th[e] litigation," *R.R. St. & Co.*, 656
16           F.3d at 981.

17   *Seneca Ins. Co., Inc.*, 862 F.3d at 846 (alterations in original).  Specifically, in *R.R. St. &*

18   *Co.*, federal defendants argued that federal plaintiffs were forum shopping by initiating a

19   separate federal action instead of filing their claims in the more comprehensive state

20   action in which they were already third-party defendants.  656 F.3d at 981.  The Court

21   concluded:

22   //

> Neither can we say that Street/National Union were merely forum shopping by filing the Federal Action. Prior to filing the Federal Action, Street/National Union had not previously asserted their claims against Transport, and we are cautious about labeling as "forum shopping" a plaintiff's desire to bring previously unasserted claims in federal court.

*R.R. St. & Co. Inc.*, 656 F.3d at 982.

Mr. Gurson emphasizes the fact that he filed his lawsuit first in state court, and he argues that Mr. McDonald's federal suit is reactive litigation intended to frustrate the progress of the state suit in the face of Mr. Gurson's motion for a preliminary injunction. (*See* MTD at 9; Reply at 4-5 (citing *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir. 1985)).) He contends that by filing claims in federal court and attempting to remove the state action, Mr. McDonald is forum shopping and attempting to circumvent the forum defendant rule, which bars Mr. McDonald from removing Mr. Gurson's state action. (*See id.*) Mr. McDonald, on the other hand, argues that he failed to file his lawsuit first because he was still negotiating in good faith to reach settlement. (*See* Resp. at 5-6.) He accuses Mr. Gurson of "forum shopping, fighting tooth and nail to stay in state court" to "frustrate discovery." (*Id.* at 8.)

The record indicates that Mr. McDonald prefers a federal forum for his claims. Indeed, he filed his own claims in federal court, he attempted to remove Mr. McDonald's state action, and he accuses Mr. Gurson of making discovery more difficult in state court. (*See* Resp. at 8.) However, the record is insufficient for the court to conclude that Mr. McDonald's federal suit is an improper attempt to forum shop or a vexatious attempt to stall state proceedings, rather than just an attempt to bring his previously unasserted claims in federal court. Unlike *Nakash*, Mr. McDonald did not seek to avoid adverse

rulings after several years of litigation. *See* 882 F.2d at 1417. And unlike *American International Underwriters*, this case does not concern a plaintiff who selected one forum but tried to switch to another after encountering evidentiary and discovery obstacles. *See* 843 F.2d at 1259. Although it is possible that Mr. McDonald is attempting to delay state proceedings, it is equally plausible that he merely seeks to litigate his claims in federal court.

Defendants do not point the court to any authority suggesting that it is always improper for a defendant in a state court proceeding to bring his previously unasserted claims in a separate federal suit. He relies only on *Lumen Construction*, where the Seventh Circuit upheld a stay. *See* 780 F.2d 691. However, in that case, five months after Brant Construction sued Lumen Construction in state court, Lumen filed a cross-complaint in state court and an identical complaint in federal court on the same day. *See* 780 F.2d at 693. In contrast, Mr. McDonald filed his initial federal complaint less than one month after Mr. Gurson filed his state complaint, and Mr. McDonald did not assert identical claims in both forums. (*See* Compl.); *see Gurson*, King County Superior Court Case No. 17-2-07709-7. The court is cognizant of the Ninth Circuit's cautious approach to disapproving of a plaintiff's desire to bring previously unasserted claims in federal court. *See R.R. St. & Co. Inc.*, 656 F.3d at 982. Because "[a]ny doubt as to whether a factor exists should be resolved against a stay," *Travelers,* 914 F.2d at 1369, the court declines to find improper forum shopping that supports abstention, *see Jenkins v. City of Richmond*, No. C 08-03401 MHP, 2009 WL 35224, at *5 (N.D. Cal. Jan. 6, 2009) (concluding this factor is neutral where "there is neither a strong showing of forum

shopping by defendant nor a strong rationale, not involving forum shopping, offered by plaintiffs to explain the unfolding of their litigation strategy").

The court begins its balance of the *Colorado River* factors "heavily weighted in favor of the exercise of jurisdiction," and grants a stay only if, on balance, the factors demonstrate exceptional circumstances that warrant a surrender of jurisdiction. *Moses H. Cone*, 460 U.S. at 16. Because each of the factors is irrelevant or neutral, a *Colorado River* stay or dismissal is not justified, and the court denies Defendants' motion.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Defendants' motion to dismiss (Dkt. # 5).

Dated this 17th day of August, 2017.

JAMES L. ROBART
United States District Judge